GEORGE C. RANKIN, Receiver of Bates National Bank, Appellant, v. BATES COUNTY INVESTMENT COMPANY et al.

**Division Two, December 19, 1911.**

CORPORATIONS: Officers: Powers: Declaring Trusts. An investment company held a deed of trust upon certain land to secure an indebtedness. Tygard, the president of this investment company, was also the president of a bank, to which the investment company was practically a subsidiary corporation and to which the owner of the land was further indebted. Tygard bought the land at a foreclosure sale under the investment company's deed of trust for an expressed consideration of one hundred dollars, not paid. He conveyed part of the land to the former owner's wife, so that she might discharge certain incumbrances with it. The remainder of the lands he conveyed also to the former owner's wife, and she, after mortgaging it to pay a part of the indebtedness to the investment company, joined with her husband in conveying it by general warranty deed to the investment company for the expressed consideration of one dollar. This suit is brought to have the last mentioned deed declared a mortgage. Written agreements and memoranda made by Tygard were put in evidence, stating that the investment company held the land in trust for the payment of the owner's further indebtedness to the bank. *Held*, that Tygard, as president of said investment company, could not, without authority from the board of directors, give away the securities for the company's choses in action, and the liens of the company are therefore superior to those of the bank.

Appeal from Bates Circuit Court.—*Hon. Wm. H. Martin,* Special Judge.

AFFIRMED.

*John A. Eaton, E. H. McVey* and *W. O. Jackson* for appellant.

(1)   In the case at bar the declaration of trust was signed by the Bates County Investment Company, by F. J. Tygard, he being its duly authorized officer. It is a valid declaration binding upon the investment company, and under the evidence it is clearly shown that the investment company held the legal title in trust under the agreements previously made between Patterson and Tygard.   (2)  Tygard was the president of the investment company and its sole manager.  He transacted all of its business.  He was also the president and controlling officer of the bank.  All the transactions in question here were arranged and conducted through him.  The memorandum was merely the written evidence of previous agreements entered• into, under which the investment company secured title to the land.  Tygard, as president of the investment company, had authority to make the agreement.  Moore v. Gaus & Son, 113 Mo. 106; Madden v. Realty Co., 75 Mo. App. 358; Kiley v. Forsee, 57 Mo. 390; Bank v. Coal Co., 86 Mo. 125; Sparks v. Transfer Co., 104 Mo. 531; Ins. Co. v. St. Mary's Seminary, 52 Mo. 480; Lloyd v. Matthews, 223 Ill. 477; 2 Thompson on Corporations (2 Ed.), secs. 1465 *et seq.*

*D. C. Chastain* and *J. S. Francisco* for respondent.

(1)  There was no consideration for the agreement between Patterson and Tygard that the title to the land should be held for the security of the bank. (a) The evidence shows that the investment company was not a party to the agreement and that it was the beneficial owner of the land.  (b) Neither was there any consideration between the bank and Patterson. (2) The affairs of this corporation were under the con-

trol of the board of directors. R. S. 1909, sec. 3347.
And since this is an attempt to convey an interest in
land it should be under the seal of the corporation
and authorized by the directors. R. S. 1909, sec. 3001.
And where the act is without seal and without consent
of the directors it is invalid. McKeag v. Collins, 87
Mo. 164; Hall v. Bank, 145 Mo. 418. The record in
this case shows affirmatively that Tygard was not au-
thorized to execute this instrument. The president of
a corporation has no power to assign the assets of the
corporation, or to sell them, or to borrow money there-
on, or kindred acts; his powers are limited to the gen-
eral charge of the corporation's property. Hyde v.
Larkin, 35 Mo. App. 365; Ferguson v. Transit Co., 79
Mo. App. 365; Milling Co. v. Insurance Co., 105 Mo.
App. 154; Bank v. Fesler, 89 Mo. App. 227; Mining
Co. v. Moore, 130 Mo. App. 633; Feld v. Investment
Co., 123 Mo. 630; Jorndt v. Reuter Hub & S. Co., 112
Mo. App. 341; Stripling v. Maguire, 108 Mo. App. 594;
Bank v. Fesler, 89 Mo. App. 217; State ex rel. v. Per-
kins, 90 Mo. App. 603; Mining Company v. Moore,
132 Mo. App. 633. With these rules of law it seems
clear that if Tygard would not have the power to bor-
row money on the strength of the corporation's assets,
nor to sell its property, nor assign the same, then it is
certainly true that he would not have the power to bind
the corporation by a gift of its property. Even the
directors of the corporation would not have this power.
10 Cyc. 768 and 799 and cases cited; Safety Vault Co.
v. Bayton, 71 Fed. 797. The authorities cited by appel-
lant on the question of apparent authority of the pres-
ident are not applicable to this case for the reason
that the officers of the bank, who were the officers of
the investment company, knew what power Tygard had
and knew further what the records of the investment
company showed. And since all of the officers of the
bank had notice, the bank itself was charged with no-

tice.  Vandagrift v. Investment Co. (Mo. App.), 128 S. W. 1007.

ROY, C.—This action was brought to declare a general warranty deed to be a mortgage.

In 1893, the defendant J. A. Patterson owned a large tract of land in Bates county, subject to incumbrances of $8000 to insurance companies, and some interest.  On September 27 of that year, he, with his wife, defendant Cora A. Patterson, executed a deed of trust on the land to secure the payment of two notes and their renewals, one for $3000 and the other for $3800, both payable to the Bates County Bank, which was on September 4, 1902, reorganized as a national bank under the name "Bates National Bank."

In June, 1897, the Bates County Investment Company was incorporated.  The stockholders in the investment company and in the bank were practically the same.  The capital of the investment company was furnished by the reduction of the capital stock of the bank to the extent of $50,000, and that much of the assets of the bank, including the two notes above mentioned, was turned over to the investment company as its capital stock.  The investment company was organized as practically a subsidiary corporation to the bank, to handle items of business which the bank was not authorized under its charter to conduct.

It is agreed by the parties that the Bates National Bank, on its organization, succeeded to all the rights, assets and business of the Bates County Bank.  F. J. Tygard was president of the Bates County Bank until it was succeeded by the Bates National Bank, of which he was president until it was placed in a receiver's hands September 20, 1906.  He was also president and general manager of the investment company from its organization until in January, 1906.  The investment company and the bank did business in the same build-

ing, using the same vault, but keeping their papers in a general way separate in the vault.

After the execution of the deed of trust to the bank, judgments were rendered against J. A. Patterson, amounting to several thousand dollars, which became junior liens on the land. In order that a sale might be made of a portion of the land clear of the judgment liens, in 1897, while the investment company was still holding the notes for $6800, Patterson and Tygard entered into an arrangement by which Tygard bought the land at a foreclosure sale under the deed of trust for an expressed consideration of $100, but which was in fact not paid. Tygard then conveyed to Cora O. Patterson a part of the land, which she at once conveyed to other parties for $9976, which was applied in payment of the senior incumbrances to the insurance company.

On September 3, 1898, while the legal title to the remaining land was in Tygard, in order that the Pattersons should procure a loan of $3300 on it from the county to pay the investment company on account of Patterson's indebtedness to it, Tygard conveyed the land to Cora O. Patterson, who borrowed the money, executing a mortgage to the county, and immediately, with her husband, executed a general warranty deed, dated October 3, 1898, conveying the land to the investment company, for the expressed consideration of one dollar.

At the time of the organization of the investment company, Patterson was indebted to the bank, in addition to the $6800, to the amount of about $5000, and the amount of his indebtedness to the bank varied at times from that time on to the time of the appointment of the receiver of the bank, when, as plaintiff claims, it amounted to $5614.83. For about $3000 of this amount the bank held chattel mortgage security.

At the time of the trial Tygard was under guardianship as a person of unsound mind. Patterson tes-

tified that the deed from his wife and himself to the
investment company was made under an agreement
between Tygard and himself that the deed was to be
held as a mortgage to secure the bank on the notes
then in the bank, and their renewals, and that the deed
was made to the investment company because the bank
could not carry real estate as security. The defend-
ant objected to this testimony on the ground that Ty-
gard was insane and Patterson was the other party
to the agreement and could not testify. The court sus-
tained the objection, but the plaintiff saved no excep-
tions to the ruling.

The following instrument was read in evidence
and was admitted to be in the handwriting of F. J.
Tygard:

"F. J. Tygard, Prest.      J. B. Newberry, Vice-Prest.
      "J. C. Clark, Sec'y & Treas.
      "Bates County Investment Co.
            "Capital $50,000.
"Abstracts of title to all lands in Bates county.
"Loans made on real estate and choice securities
for sale.

                  "Butler, Mo., Oct. 1, 1901.
"Whereas, Jno. A. Patterson is now indebted to
the Bates County Bank in the sum of $6674.70, and
whereas this Co. holds a Wt. deed from said Patter-
son for 550 acres of land at an estimated value of
$————, and whereas the interest of this Co. and of
the Bates Co. Bk. are closely connected, it is therefore
understood and agreed that this Co. holds the land
above referred to in trust as follows: First, for the
benefit of said Bates County Bank to secure indebted-
ness of said J. A. Patterson for amt. of $6674.70.
                  "Bates County Inv. Co.
                  "By F. J. Tygard, Pt.
"Copy of this delivered to Bates Co. Bank & held
in Coll. pkgs."

And a copy of it was kept among the collateral securities of the bank from its date.

The plaintiff read in evidence a memorandum in a book kept among the archives of the bank, in the handwriting of Tygard, dated December 9, 1897, containing a list of the Patterson land with the following written under the list:

"Containing in all:

"All of above lands sold this day & bo.t by F. J. Tygard for bank for $100.

"Prior liens on above lands.

"Mch. 12/98—I bot. at sheriff's sale for the Bank for $25.00 all of the land described on p. 23 & also W. ½ Lot 23 S. 5, 39, 32.

"Oct. 7/98—Patterson gave us trust deed on W. ½ of lot 9, N. W. 5, 39, 32. E. ½ Lot 23, 6. 39, 32, for $169."

On November 1, 1906, there was realized, on a sale of a portion of the land, a net amount of $3282.54, which, by agreement, was delivered to the Farmers' Bank of Bates county, defendant, to await the result of this suit. Of that amount the sum of $2500 was loaned the investment company on a deed of trust, under an agreement of the parties to the suit that it should depend on the result of this suit; and the sum of $784.54 remains still with the Farmers' Bank.

The decree found in favor of the investment company, allowing it a prior lien for $3854.15, the balance of the $6800 debt, against the funds in the Farmers' Bank and against the unsold lands. Subject to the foregoing liens, the receiver of the Bates National Bank was decreed a lien on all the unsold land for the amount of $5614.83. There are other features of the decree which it is unnecessary to set out here.

## OPINION.

It stands conceded that the investment company, on its organization, became the owner by assignment from the bank of the two notes for $3000 and $3800 respectively, secured by the Patterson deed of trust. It is not pretended that any consideration was ever paid by the bank to the investment company as an inducement for the surrender of its lien on the land in favor of the bank. When Tygard acquired the legal title under the foreclosure, he paid nothing, and, under the law, held it as surety for the $6800 notes due the investment company of which he was president. He had no right, as between the parties here concerned, to agree that the lien of the investment company should be subject to the bank's claims. The conveyance by Tygard to Cora O. Patterson and from her to the investment company only strengthened that company's position, as it then held the legal title in addition to its lien. Tygard had no power to agree, either orally or in writing, that the lien of the investment company should be made subordinate to the bank's claims. He could not give away the company's property, or the securities for its choses in action.

In Brinkerhoff Zinc Co. v. Boyd, 192 Mo. l. c. 612, Judge VALLIANT, speaking on this subject, said: "It is sufficient to say that they were trustees for the management and care of the property of the corporation, and whilst they had the right to deal with it in a business way, it did not belong to them in their own right and they could not give it away." It was said by Judge LURTON in Germania Safety-Vault & Trust Co. v. Boynton, 71 Fed. 797: "The general presumption in favor of such officers of a corporation might support a disposition of the securities for any apparent corporate purpose, but that presumption does not extend so far as to justify one who accepts such securities in pay-

ment of, or as security for, the private obligation of the officer.''

This proposition is so elementary that we deem it unnecessary to cite further authorities. There is no pretense that Tygard had any authority by resolution of the board of directors to thus surrender the company's rights. This conclusion determines all the other questions involved. The judgment is affirmed. *Bond, C.* (sitting in Division Two when this case was argued), concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court, all the judges concurring.